1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Shannon Waldrop,                        No. CV-20-00246-PHX-MTM

10                    Plaintiff,            **ORDER ENTERING**
                                           **DEFAULT JUDGMENT**
11  v.

12  LTS Collections Incorporated, et al.,

13                    Defendants.

14

15         Pending before the Court is Plaintiff's Motion for Default Judgment (doc. 18).

16  Plaintiff seeks a default judgment against Defendants for violations of the Fair Debt

17  Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), and the California

18  Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788, *et seq.*

19  ("Rosenthal Act"). Plaintiff seeks an award of $13,535.00, including damages, attorney's

20  fees, and costs. For the reasons prescribed below, the Court grants Plaintiff's Motion for

21  Default Judgment, and awards a total of $13,035.00 in damages, fees, and costs.

22  **I.    FACTUAL BACKGROUND**

23         The following facts are taken from Plaintiff's Complaint (doc. 1). Defendant LTS

24  Collections Incorporated ("LTS") is a corporation licensed to do business in the state of

25  California. (*Id.* at 3). Defendants Joshua and Dawn Sipera are residents of California, while

26  Plaintiff Shannon Waldrop is a resident of Arizona. Joshua and Dawn Sipera are directors

27  and officers of LTS. (*Id.* at 4-5). On August 8, 2019, Plaintiff was contacted by an

28  employee of LTS, who identified her employer as "Coastal Locating Agency." (*Id.* at 6).

The employee stated that she was in possession of a "[c]omplaint that has been issued against Shannon Waldrop," and that she was attempting to serve the complaint on Plaintiff. (*Id*). According to the caller, Plaintiff would have two hours to call back to avoid being served with the complaint. (*Id*).

With Plaintiff's consent, Plaintiff's husband called the phone number back the same day to obtain more information about the substance of the complaint.[1] The individual at the other end of the line identified the company as "Lucas and Tillman Solutions." (*Id*).[2] During this conversation, LTS' employee made at least seven statements: (1) that there was a pending civil action "that we have in [Plaintiff's] name;" (2) that an unnamed creditor was "looking to pursue [Plaintiff] for a judgement;" (3) that the allegedly delinquent debt was on Plaintiff's credit report; (4) that the creditor intended to "pursue [Plaintiff] through a civil arbitration;" (5) that the creditor had already performed an "asset and liability investigation" against Plaintiff; (6) that the creditor may seek to garnish "20-25% of any paychecks that [Plaintiff had] coming in" if Plaintiff did not work with LTS to "settle their account;" and, (7) that "[i]n order to get [Plaintiff] out of processing and pre-dismissal," Plaintiff had to settle the debt with LTS that same day. (*Id*. at 6-7). Plaintiff further states that, at the time these statements were made, LTS had already obtained ownership of the allegedly delinquent debt, and that there was no other creditor. (*Id*. at 3).

After LTS made the statements described in the preceding paragraph, Plaintiff states that Plaintiff's husband requested a validation letter, but that LTS refused to provide Plaintiff with one. (*Id*. at 7). LTS informed Plaintiff's husband that, if he hung up the phone before agreeing to a repayment plan, "the underwriting department will pursue a judgment against Plaintiff." (*Id*). Plaintiff and Plaintiff's husband had two additional conversations with LTS on August 8, 2019; in one of those conversations, LTS stated that "the underwriting department had 'accessed' Plaintiff's file" in the time since they had last

---

[1] Plaintiff also states that Defendants were unaware that they were speaking to Plaintiff's husband instead of Plaintiff, and that the statements and actions taken by Defendants in this matter were intended for Plaintiff. (Doc. 1 at 7-8).
[2] The Complaint asserts that LTS does business as Lucas and Tillman Solutions. (Doc. 1 at 1).

spoken. (*Id*). Plaintiff did not tender any payments to LTS.

Plaintiff states that the communications between LTS and Plaintiff left Plaintiff with the impression that a lawsuit either had been filed or would imminently be filed. (*Id*. at 8). Plaintiff affirms that, as of February 3, 2020, no civil action was filed or is pending against Plaintiff in any jurisdiction seeking to collect on the allegedly delinquent debt. (*Id*). Plaintiff further states that LTS never intended to file an action to collect on Plaintiff's account, because the statute of limitations to collect the allegedly delinquent debt had already expired at the time the first contact between LTS and Plaintiff occurred. (*Id*).

On February 3, 2020, Plaintiff filed a Complaint (doc. 1) with this Court. In the Complaint, Plaintiff seeks $2,000.00 in statutory damages each against Defendants LTS, Joshua Sipera, and Dawn Sipera. (*Id*. at 12-13). Plaintiff also seeks actual damages for pain and suffering, as well as attorney's fees and costs totaling $7,535.00, to be awarded jointly and severally against all three named Defendants. (*Id*)

On February 12, 2020, Plaintiff executed service on all three Defendants. (Docs. 14 at 2, 14-1 at 2, 14-2 at 2). Defendants had until March 4, 2020 to file a responsive pleading in this matter. Defendants did not do so. On March 5, 2020, Plaintiff filed an Application for Entry of Default (doc. 15) pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The Clerk of Court entered default on March 6, 2020. (Doc. 16). On April 28, 2020, this Court issued an Order to Show Cause (doc. 17) why this matter should not be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). On May 15, 2020, Plaintiff responded to the Order to Show Cause by filing the present Motion for Default Judgment (doc. 18), along with a Brief in Support (doc. 19).

## II.    JURISDICTION

Before the Court may consider Plaintiff's Motion for Default Judgment, the Court must consider whether it may exercise jurisdiction over the party's claims.

### 1.    Subject-Matter Jurisdiction

As Plaintiff alleges violations of the FDCPA, the Court may exercise jurisdiction under 28 U.S.C. § 1331 over Plaintiff's FDCPA claims. Because Plaintiff's state law

1    Rosenthal Act claims are "so related to claims in the action within [the court's] original
2    jurisdiction that they form part of the same case or controversy," the Court exercises
3    supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's Rosenthal Act claims.
4    *Rockridge Trust v. Wells Fargo, N.A.*, 965 F. Supp. 2d 1110, 1135-36 (N.D. Cal. 2013).

5        **2.    Personal Jurisdiction**

6        The Court may exercise personal jurisdiction over Defendants. Unless a federal
7    statute specifies otherwise, a district court applies the long-arm statute of the state in which
8    it sits. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). Arizona's long-
9    arm statute extends personal jurisdiction "to the maximum extent permitted by the
10   Constitution of the United States," accordingly personal jurisdiction is proper so long as it
11   does not offend due process. *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170,
12   1175 (D. Ariz. 2010).

13       A court may exercise personal jurisdiction if a defendant has sufficient "minimum
14   contacts" with the forum state so that subjecting the defendant to its jurisdiction will not
15   "offend traditional notions conceptions of fair play and substantial justice." *Int'l Shoe Co.*
16   *v. Washington*, 326 U.S 310, 316 (1945)(internal citations omitted). This standard can be
17   met by establishing either general or specific personal jurisdiction.

18       General personal jurisdiction exists where the defendant's contacts with the forum
19   state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*,
20   466 U.S. 408, 415 (1984). Specific personal jurisdiction exists where a defendant "has
21   purposefully directed his activities at residents of the forum and the litigation results from
22   alleged injuries arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*,
23   471 U.S. 462, 472 (1985)(internal citations omitted).

24       This Court may exercise specific personal jurisdiction over Defendants. The
25   Complaint indicates that, on multiple occasions, Defendants intentionally contacted
26   Plaintiff by telephone to attempt to collect an alleged debt. (Doc. 1 at 6-7). This is sufficient
27   to demonstrate that Defendants purposefully directed activities at residents of the forum,
28   and that the litigation results from injuries alleged to arise out of those activities. *See Vaile*

1   *v. Nat'l Credit Works, Inc.*, No. CV-11-674-PHX-LOA, 2012 WL 1520120 at *5 (D. Ariz.

2   Mar. 25, 2012)(citing *Seakley v. Redline Recovery Serv., LLC*, 723 F. Supp. 2d 1341, 1344-

3   45 (S.D. Cal. 2010)). The Court may therefore exercise specific personal jurisdiction over

4   Defendants.

5         **3.**    **Standing**

6         To establish standing to sue, a party alleging a violation of the FDCPA must

7   establish more than a mere statutory violation. *Tourgeman v. Collins Fin. Serv., Inc.*, 197

8   F. Supp. 3d 1205, 1208-09 (S.D. Cal. 2016); *see also Spokeo v. Robins, Inc.*, 136 S. Ct.

9   1540, 1549 (2016)("Article III standing requires a concrete injury even in the context of a

10  statutory violation. For that reason, Robins could not, for example, allege a bare procedural

11  violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of

12  Article III.").[3] Some additional concrete injury is necessary to maintain this action.

13        The Court concludes Plaintiff has standing to bring this action. Plaintiff alleges that,

14  in addition to the statutory violations of the FDCPA and Rosenthal Act, Plaintiff suffered

15  additional emotional distress and pain and suffering damages related to the various

16  collection attempts by Defendants, including fear, anxiety, stress, mental anguish, and

17  physical symptoms such as loss of sleep, loss of appetite, and headaches. (Doc. 1 at 9).

18  These allegations are sufficient to establish a concrete injury for purposes of determining

19  damages under the FDCPA. *See Sosa v. Crowning Point Solutions, LLC*, No. 15-CV-2458-

20  JAM-EFB, 2016 WL 3218187 at *4-5 (E.D. Cal. June 9, 2016)(citing *Nelson v. Equifax

21  Info. Servs.*, 522 F. Supp. 3d 1222 (C.D. Cal. 2007)).

22        Additionally, Plaintiff alleges that the Defendants used fictitious company names

23  (doc. 1 at 6) and failed to inform Plaintiff that the alleged debt in question was no longer

24  collectable via court order because the statute of limitations to file an action to collect the

25  debt had expired prior to Defendants' contact with Plaintiff. (*Id*. at 8). A number of courts

26  have concluded that "informational violations" constitute concrete injury for purposes of

27        [3] Because Plaintiff commenced this action in federal court, federal constitutional

28  requirements governing standing apply, even to Plaintiff's state law claims. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 618 (1989).

1  standing. *See Beane v. RPW Legal Serv., PLLC*, 378 F. Supp. 3d 948, 956 (W.D. Wash.
2  2019)(collecting cases). Plaintiff has standing to obtain relief in this Court.

3  **III.   MOTION FOR DEFAULT JUDGMENT**

4  Rule 55(b)(2) of the Federal Rules of Civil Procedure permits a court to grant default
5  judgment against a party after the Clerk of Court has issued an Entry of Default pursuant
6  to Fed. R. Civ. P. 55(a). The Court must consider seven factors: (1) the possibility of
7  prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of
8  the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning
9  material facts; (6) whether defendant's default was due to excusable neglect; and (7) the
10  strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the
11  merits. *Const. Laborers Trust Funds for S. Cal. Admin. Co. v. Anzalone Masonry, Inc.*, 316
12  F. Supp. 3d 1192, 1198 (C.D. Cal. 2018)(citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72
13  (9th Cir. 1986)). The Court considers these factors in turn:

14  **1.    Prejudice to Plaintiff**

15  The first *Eitel* factor weighs in favor of default judgment. Plaintiff will be prejudiced
16  by failure to enter default judgment, as continuation of this action despite Defendants'
17  failure to respond precludes Plaintiff's ability to either obtain relief or litigate this case on
18  the merits.

19  **2.    Merits of Complaint/Sufficiency of Claim**

20  The second and third *Eitel* factors weigh in favor of default judgment. When moving
21  for a default judgment, "the well-pleaded factual allegations in the complaint are accepted
22  as true, with the exception that allegations as to the amount of damages must be proved."
23  *Anzalone*, 316 F. Supp. 3d at 1198. The FDCPA is a strict liability statute, meaning Plaintiff
24  need only plead facts sufficient to show Defendants engaged in conduct "to harass, oppress,
25  and abuse the consumer," or used "false, deceptive, or misleading representations" that
26  Defendants would use legal action to collect a debt. *Nordyke v. Summit Receivables*, No.
27  17-CV-01705-WBS-AC, 2018 WL 2732455 at *3 (E.D. Cal. June 7, 2018)(citing *Gonzales
28  v. Arrow Fin. Servs., Inc.*, 660 F.3d 1055, 1060-61 (9th Cir. 2011)). As the Rosenthal Act

incorporates the FDCPA by reference, *see* Cal. Civ. Code § 1788.17, conduct that violates the FDCPA also violates the Rosenthal Act. *Barria v. Wells Fargo Bank, N.A.*, No. 15-CV-01413-KJM-AC, 2016 WL 474319 at *4 (E.D. Cal. Feb. 8, 2016)(citing *Riggs v. Prober & Raphael*, 687 F.3d 1097, 1100 (9th Cir. 2012)).

Plaintiff has pleaded facts sufficient to find Defendants violated the FDCPA and the Rosenthal Act. To establish a violation of the FDCPA, a plaintiff must show that (1) plaintiff is a consumer; (2) plaintiff has been the object of collection activity arising from a "consumer debt" within the meaning of the FDCPA; (3) defendant is a "debt collector as defined by the FDCPA; and, (4) defendant has engaged in an act or omission in violation of the FDCPA. *Miranda v. Law Ofc. of D. Scott Carruthers*, No. 10-CV-01487-OWW-SMS, 2011 WL 2037556 at *4 (E.D. Cal. May 23, 2011)(citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).

Plaintiff has sufficiently pled that she is a consumer, and that the debt at issue in this case is consumer debt. A "consumer" is defined by the FDCPA as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).[4] The debt at issue must also be "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Plaintiff alleges that she was obligated to a credit account used for "personal or family purposes" that went into default. (Doc. 1 at 2-3).

Plaintiff has also sufficiently pled facts to indicate that Defendants are debt collectors. A "debt collector" under the FDCPA is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).[5] Plaintiff alleges that Defendant LTS is incorporated in California and

---

[4] The Rosenthal Act defines a "debtor" as "a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person." Cal. Civ. Code § 1788.2(h). There is no meaningful distinction between the two definitions for purposes of this Order.

[5] The Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

identified itself as a "collection services" company with the California Secretary of State. (Doc. 1 at 3). Plaintiff further alleges that Defendant LTS and its agents contacted Plaintiff, an Arizona resident, via telephone for purposes of collecting on allegedly delinquent debt. (Doc. 1 at 5-8). Plaintiff has therefore alleged facts sufficient to show Defendants were "debt collectors" within the meaning of the FDCPA.

Plaintiff has pled facts sufficient to conclude Defendants violated the FDCPA and the Rosenthal Act.[6] Plaintiff alleges that Defendants used a fake company name when attempting to collect on Plaintiff's allegedly delinquent debt. (Doc. 1 at 6). The FDCPA and the Rosenthal Act prohibit the use of false identifying information when attempting to collect on debt. *Day v. Law Ofcs. of A. Lysa Simon*, CV-18-5601-PSG (Ex), 2019 WL 1751824 at *7 (C.D. Cal. Feb. 4, 2019) (FDCPA); *Munekiyo v. Capital One Bank, N.A.*, No. CV-11-3143 CAS (JCx), 2011 WL 6057830 at *6 (C.D. Cal. Dec. 5, 2011) (Rosenthal Act). Therefore, Plaintiff has demonstrated Defendants violated both the FDCPA and the Rosenthal Act by using the name "Coastal Locating Agency" instead of LTS.

Plaintiff also alleges that Defendants informed Plaintiff that failure to pay the alleged delinquent debt would result in Plaintiff being served with a civil complaint, even though no civil lawsuit had been filed at or subsequent to the collection attempt. (Doc. 1 at 7-8). The FDCPA and the Rosenthal Act prohibit a debt collector from threatening to take legal action to collect a debt if the collector does not actually intend to take such action. *See* 15 U.S.C. § 1692e(5); Cal. Civ. Code § 1788.10(e). Plaintiff has established violations of both the FDCPA and the Rosenthal Act.

Finally, Plaintiff has proven that all three Defendants may be held jointly and severally liable for violations of the FDCPA and the Rosenthal Act. Vicarious liability under the FDCPA is guided by general principles of agency; for a principal to be vicariously liable for the actions of individual employees, the principal must exercise

---

[6] In the Brief in Support of Plaintiff's Motion for Default Judgment (doc. 19), Plaintiff sets forth alleged violations of fifteen (15) separate provisions of the FDCPA and eleven (11) violations of the Rosenthal Act. (*Id*. at 4-7). Because any one violation of the FDCPA or the Rosenthal Act is sufficient to impose statutory liability on Defendants, it is not necessary to discuss every alleged violation.

control over the conduct or activities of the agent. *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1089 (E.D. Cal. 2013)(citing *Clark v. Capital Credit and Collections Serv.*, 460 F.3d 1162, 1173 (9th Cir. 2006)). In the Complaint, Plaintiff set forth facts indicating that Defendant Joshua Sipera created, managed, and ratified the practices of Defendant LTS in collecting outstanding debts, and Defendant Dawn Sipera is a director of Defendant LTS. (Doc. 1 at 4). Defendants therefore have the agent/principal relationship necessary to be held jointly and severally liable for violations of the FDCPA and the Rosenthal Act.

Accordingly, Plaintiff has alleged facts sufficient to prove Defendants violated the FDCPA and the Rosenthal Act. The second and third *Eitel* factors weigh in favor of granting the motion for default judgment against Defendants.

### 3. Amount in Controversy

The fourth *Eitel* factor weighs in favor of entering default judgment. Default judgment is disfavored where the sum of money requested is too large or unreasonable when compared to a defendant's conduct. *Anzalone*, 316 F. Supp. 3d at 1201.

The requested damages in this case are reasonable; Plaintiff requests a total judgment of $13,535.00. Of that amount, $6,000.00 is requested pursuant to statutory maximums; the FDCPA provides for statutory damages of up to $1,000.00 per violation, while the Rosenthal Act provides for statutory damages of no less than $100.00 and no more than $1,000.00 per violation. 15 U.S.C. § 1692k(2)(A); Cal. Civ. Code § 1788.30(b).

Additionally, $5,035.00 is requested for attorney's fees and costs. Fees and costs are mandatory under the FDCPA should a violation be proved. 15 U.S.C. § 1692k(a)(3). The remaining $2,500.00 sought for actual damages are for alleged emotional and physical distress. The amounts are not so unreasonable that they weigh against default judgment.

### 4. Possibility of Dispute

The fifth *Eitel* factor weighs in favor of entering default judgment. The possibility of a dispute regarding material facts is relevant only so far as there are two parties present to dispute those facts. When one party fails to appear to defend an action, there is no dispute

of material facts.

### 5.    Excusable Neglect

This factor weighs heavily in favor of granting default judgment. The risk of excusable neglect is substantially lessened when a defendant fails to respond after being properly served. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Defendants were served on February 12, 2020 (*see* doc. 14) and have failed to respond by filing an answer, a motion to dismiss, or some other responsive pleading indicative of intent to contest this action. Therefore, this factor supports entry of default judgment against Defendants.

### 6.    Decisions on the Merits

The final *Etiel* factor supports entry of default judgment. Though the Federal Rules of Civil Procedure contain a strong preference for deciding cases on the merits, a judgment on the merits is impractical, if not impossible, where defendants fail to respond to a plaintiff's complaint. *Anzalone*, 316 F. Supp. 3d at 1202. Accordingly, the preference for decisions on the merits does not preclude default judgment.

### 7.    Conclusion

After analyzing the *Etiel* factors, the Court concludes that all seven factors favor a default judgment.  Accordingly, default judgment against all Defendants in this matter is warranted.

## IV.    DAMAGES

Having determined that Plaintiff has pled facts sufficient to claim both actual and statutory damages, the Court now considers the appropriate damages award. Even when a party defaults an action, the prevailing party is required to produce evidence to support a specific damages award. *Anzalone*, 316 F. Supp. 3d at 1202.

### 1.    Actual Damages

The Court awards actual damages. Plaintiff seeks $2,500.00 in actual damages jointly and severally against Defendants for emotional distress associated with the harassing conduct described in the Complaint. (Doc. 19, at 11-12). While the Ninth Circuit

has not decided if corroborating evidence is necessary to prove the requested amount of emotional distress damages under the FDCPA, the Ninth Circuit has recognized in other contexts that emotional distress damages can be awarded "where circumstances make it obvious that a reasonable person would suffer significant emotion[al] harm." *Perkons v. Am. Acceptance, LLC*, No. CV-10-8021-PCT-PGR, 2010 WL 4922916 at *3 (D. Ariz. Nov. 29, 2010)(citing *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004), *abrogated on other grounds*, *In re Gugliuzza*, 852 F.3d 884 (9th Cir. 2017)).

The Court reduces the amount of actual damages sought from $2,500.00 to $2,000.00. Plaintiff's claim for actual damages is not overly detailed; the evidence provided includes a recitation of injuries alleged in the Complaint, with a collection of cases from a number of jurisdictions where emotional distress damages were awarded. (Doc. 19 at 11-12). However, Plaintiff does state a claim for emotional distress damages, does identify particular types of physical and emotional harms—headaches, loss of sleep, and loss of appetite—and does plead facts with sufficient particularity to conclude that Defendants' conduct in this case is sufficiently egregious that it is "obvious that a reasonable person would suffer significant emotion[al] harm." *Perkons*, 2010 WL 4922916 at *3. Accordingly, the Court awards actual damages but reduces the amount of damages recoverable by Plaintiff against Defendants from $2,500.00 to $2,000.00.

### 2. Statutory Damages

In determining the amount of statutory damages to award an individual plaintiff bringing an FDCPA suit, a court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Unlike the FDCPA, the Rosenthal Act renders statutory damages contingent on the defendant's state of mind. *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1297 (E.D. Cal. 2014) (citing Cal. Civ. Code § 1788.30(b)). The violation must be "willful and knowing" for the violation to result in statutory damages. *Id.*

Plaintiff is entitled to full statutory damages under the FDCPA and the Rosenthal

Act.[7] The Complaint indicates that Plaintiff and Defendants communicated on at least four occasions. (Doc. 1 at 6-8). Additionally, the alleged misconduct escalated with each subsequent conversation; Defendants indicated during the first conversation that they had filed a civil action against Plaintiff to collect on Plaintiff's allegedly delinquent debt even though no action was ever filed. (Doc. 1 at 6). On a subsequent call, Defendants suggested that "Plaintiff had to pay the Account that day" in order to avoid further collection activity. (*Id.* at 7). Defendants also refused to provide a validation letter indicating the delinquency was legitimate and stated that the "underwriting department had 'accessed' Plaintiff's file in the time since he was on the previous call with them," with the intent to scare Plaintiff into believing that legal action was either imminent or in progress (*Id*).

The conduct described—which Defendants failed to answer despite having been personally served—is egregious, and warrants the maximum statutory penalty proscribed by the FDCPA. *See Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1216-18 (S.D. Cal. 2008) (full statutory damage award for threatening legal action to collect debt after the statute of limitations expired); *Esget v. TCM Fin. Serv. LLC*, No. 11-CV-00062-AWI-BAM, 2014 WL 258837 at *7 (E.D. Cal. Jan. 23, 2014) (full statutory damage award for threatening debtor with lawsuits and wage garnishments that collector "never intended to take"); *Miranda*, 2011 WL 2037556 at *5 (full statutory damage award for mailing plaintiff a letter with the heading "NOTICE OF PENDING COURT PROCEEDINGS" when no lawsuit had been filed). As each individual Defendant played a role in the unlawful conduct at issue here, each individual Defendant is liable for statutory damages. Accordingly, the Court awards Plaintiff $1,000.00 in statutory damages against Defendants LTS, Joshua Sipera, and Dawn Sipera, for a total of $3,000.00 in statutory damages under the FDCPA.

Additionally, a number of the violations—using a fictitious company name, stating a civil action had been filed even though no action was ever filed, and demanding payment

---

[7] Plaintiff is entitled to cumulative statutory damages for violations of the FDCPA and the Rosenthal Act. When confronted with this exact question, the Ninth Circuit held that the statutory damages provisions of both the FDCPA and the Rosenthal Act overcome the general presumption that a plaintiff may not receive multiple awards for the same item of damage. *Gonzales*, 660 F.3d at 1068.

be made that day in order to end collection activity—exceed mere negligence of lack of care; they are willful and knowing misrepresentations. Accordingly, Plaintiff is entitled to $1,000.00 in statutory damages each against Defendant LTS, Defendant Joshua Sipera, and Defendant Dawn Sipera, for a total of $3,000.00 in statutory damages, under the Rosenthal Act as well.

## IV.   ATTORNEY'S FEES

Plaintiff also seeks attorney's fees and costs in the amount of $5,035.00. (Doc. 18, at 2). Plaintiff filed a Statement of Services (doc. 18-1) containing an itemized list of expenses incurred in the course of litigating this action, as well as an affidavit (doc. 18-2) of Plaintiff's counsel attesting to the accuracy of the Statement of Services, as well as the reasonableness of counsel's service rate of $300.00 per hour. (*Id.* at 2).

Rule 54.2(c) of the Local Rules of Civil Procedure requires a party seeking fees and costs to include (1) "the applicable statutory or contractual authority upon which the movant seeks an award of attorneys' fees and related non-taxable expenses," including a statement as to the claims the moving party prevailed on in the action; (2) the relevant legal authority supporting the award of attorney's fees and costs; and, (3) the reasonableness of the request award, listing thirteen (13) non-exhaustive factors.

Plaintiff is entitled to attorney's fees. The FDCPA provides that a debt collector found to have violated the FDCPA is liable to the debtor for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The Ninth Circuit construes this provision of the FDCPA as mandatory. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory.")

Federal courts generally use the "lodestar" method to calculate reasonable attorney's fees. Employing this method, the Court takes a "reasonable hourly rate" and multiplies the rate by "the number of hours reasonably expended on the litigation." *Bray v. Maxwell & Morgan PC*, No. CV-18-00486-PHX-DGC, 2017 WL 5668269 at *1 (D. Ariz. Nov. 27, 2017)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Determining what

1   is a "reasonable hourly rate" requires consideration of the novelty and complexity of the

2   issues, the skill and experience of counsel, the quality of representation, and the results

3   obtained. *Id.* A court may also consider the prevailing rate in the community for similar

4   legal work performed by attorneys of comparable skill and experience. *Id.* at *2.

5     Plaintiff's counsel's hourly rate of $300.00 is reasonable. Plaintiff's counsel attests

6   that he has been a licensed attorney since September 2006, has handled FDCPA cases since

7   2008, has litigated or screened more than five hundred (500) FDCPA cases in his career,

8   and is currently a solo practitioner. (Doc. 18-2, at 1). In *Bray*, the district court concluded

9   that an hourly rate of $325.00 for a twenty (20) year practitioner and an hourly rate of

10  $250.00 per hour for an eight (8) year practitioner were both reasonable in an action

11  involving violations of the FDCPA:

12  > Plaintiff has adequately supported her assertion that the rates of $325 and
13  > $250 are reasonable in the community based on counsel's skill, experience,
    > and reputation. An attorney with 20 years of experience could reasonably
14  > charge a rate higher than the average, and Defendants provide no evidence
    > to support their assertion that an attorney with eight years of experience must
15  > charge well below the average.

16  *Bray*, 2017 WL 5668269 at *2. This District has ruled that rates charged by attorneys

17  litigating FDCPA cases higher than the rates charged here are reasonable. *See St. Bernard*

18  *v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823, 827 (D. Ariz. 2010) ($350.00 hourly

19  rate); *Marshall & Ziolkowski Enter. LLC*, No. CV-07-0279-PHX-JAT, 2009 WL 1097534

20  at *2 (D. Ariz. Apr. 22, 2009) ($400.00 hourly rate). The Court concludes a $300.00 hourly

21  rate is reasonable in this matter.

22    The number of hours worked by Plaintiff are reasonable as well. In the Statement

23  of Services, Plaintiff's counsel states that a total of fifteen (15) hours' worth of work was

24  performed in connection with this action. (Doc. 18-1). Plaintiff's counsel estimates that 3.6

25  hours were performed drafting the Complaint, while 4.2 hours were spend drafting the

26  Motion for Default Judgment and supporting documents.

27    The Court concludes that none of Plaintiff's billed services are so unreasonable as

28  to warrant a reduction in the hours documented. *See, e.g., St. Bernard*, 782 F. Supp. 2d at

827-828 (awarding five hours of billable time for drafting the complaint in a FDCPA action). Additionally, the remaining entries list time performed on tasks that are not merely "secretarial" in nature, but potentially impacted the progress of the litigation, and should be included as part of the final time estimate. *Id.* at 828. Accordingly, the Court adopts Plaintiff's proposed fifteen hours worked as reasonable.

Applying the proposed hourly rate of $300.00 to fifteen hours of work, the Court awards attorney's fees to Plaintiff in the amount of $4,500.00. Because costs are also mandatory under the FDCPA, the $535.00 in costs to file this action in this Court and to serve process on Defendants are warranted as well. Plaintiff is therefore entitled to recover $5,035.00 in fees and costs from Defendants.

## V.   CONCLUSION

Because Defendants failed to defend this action after being properly served, and because the well-pleaded allegations in the Complaint, taken as true, demonstrate Defendants violated both the FDCPA and the Rosenthal Act, the Court grants Plaintiff's Motion for Default Judgment. The Court awards $2,000.00 in statutory damages against Defendant LTS Collections, Inc., $2,000.00 in statutory damages against Defendant Joshua Sipera, $2,000.00 in statutory damages against Defendant Dawn Sipera, and $7,035.00 in actual damages, fees, and costs against Defendants jointly and severally.

**IT IS ORDERED:**

(1)   Plaintiff's Motion for Default Judgment (doc. 18) is **GRANTED**. Plaintiff is awarded damages, fees, and costs in the total amount of $13,035.00, to be apportioned as follows:

(A)   Defendant LTS Collections, Inc. is **ORDERED** to pay Plaintiff a sum of $2,000.00 in statutory damages.

(B)   Defendant Joshua Sipera is **ORDERED** to pay Plaintiff a sum of $2,000.00 in statutory damages.

(C)   Defendant Dawn Sipera is **ORDERED** to pay Plaintiff a sum of $2,000.00 in statutory damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       (D)     Defendants LTS Collections, Inc., Joshua Sipera, and Dawn Sipera are jointly and severally liable to Plaintiff for $7,035.00 in actual damages, attorney's fees and costs.

      (2)    The Clerk of Court shall enter judgment accordingly and close this case.

Dated this _____4_____ day of ~~October~~ November, 2020.


Honorable Stephen M. McNamee
Senior United States District Judge